**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**J. MICHAEL SAUER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS LEER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1204-PC-185 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Gene R. Duffin, Senior Judge
Cause No. 20C01-0807-PC-10

**November 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Dennis Leer appeals the denial of his petition for post-conviction relief (PCR), by which he sought to challenge the sentence he received following his conviction of murder. Leer presents the following restated issue for review:  Did the post-conviction court err in determining that Leer's trial and appellate counsel did not render ineffective assistance in failing to challenge the imposition of Leer's sixty-year sentence for murder consecutively to a sentence for an unrelated conviction for attempted murder?

We reverse and remand with instructions.

The facts of the underlying occurrence were set out in this court's affirmance of Leer's conviction upon direct appeal, as follows:

> Leer and Marie Kline were friends in high school in the 1980s.  During the summer of 1985, Leer and his girlfriend briefly shared an apartment with Marie and her boyfriend.  During that time, Leer and Marie became involved in a sexual relationship.  After the couples moved apart, Leer and his girlfriend got married and no longer saw Marie.

> Two years later, between Thanksgiving and Christmas in 1987, Leer and his wife happened to see Marie at a local shopping mall.  The Leers invited Marie to their home for dinner.  During the dinner, Marie and Leer's wife decided that they would try and keep in touch and get together more than they had in the past.  Around that time, the Leers began experiencing marital problems because Leer's wife thought Leer was spending too much time with one of his friends.  For example, Leer's wife became very angry when Leer and his friend went out of town on Christmas Eve and Leer was not at home with her and their new baby.

> During this time, Marie was living with her father and her brother and working both a full-time and a part-time job.  On December 29, 1987, Marie went to bed after eating dinner with her father and brother.  When Marie's father ("Kline") went to bed, he turned off all of the interior and exterior lights and locked the front door.  At approximately 1:00 a.m., someone rang the front doorbell.  Kline heard Marie get up and answer the door and he then fell back to sleep. When Kline got up the following morning, he noticed that Marie was not at home.  Kline also noticed that Marie's car was still in the garage, the exterior lights on the house were on, and the front door was unlocked. Kline

further noticed in the snow on his driveway one set of footprints leading from the driveway to the front door of the house and two sets of footprints leading from the front door of the house back to the driveway. The footprints ended as if two people had each gotten into a different side of the same vehicle.

When Marie's employer called looking for Marie because she had not reported for work that morning, Kline contacted the police to report that Marie was missing. The police found Marie's coat on a pile of snow in a church parking lot about a mile from her house. There appeared to be a bullet hole and blood on the left side of the jacket.

A few days later, on January 1, 1988, the police found Marie's dead body in a nearby open field. She was lying on her back with her arms positioned over her head, and her intestines were coming out of a gunshot wound on her left side. Marie had also been shot in the mouth. Her jaw was fractured, the back of her throat and the base of her skull were perforated, and her brain stem was blown away. Both shots were made with a shotgun, as evidenced by the numerous shotgun pellets found inside Marie's wounds. In addition, the police found a spent twelve-gauge shotgun shell near Marie's body.

The police also noticed drag marks in the snow from the road to the body. There was a large pool of blood in one area of the drag-path. The police further noticed one set of footprints going from the road to the large pool of blood on the drag-path, then back to the road, back to the drag-path, and on to where the body was found. Vaginal and cervical swabs were taken from Marie during an autopsy.

The Elkhart County Sheriff's Department investigated the case and considered several suspects, including Anthony Zeiger and Michael Lambright, Marie's former boyfriends and Scott Ulrich, her boyfriend at the time of her death. No arrests were made however. In 2002, the Sheriff's Department turned the case over to the Indiana State Police Cold Case Squad. The detectives assigned to the case sent Marie's vaginal and cervical slides to the crime lab, which discovered sufficient spermatozoa on the slides from which DNA could be extracted and analyzed for comparison purposes. Subsequent tests revealed that Leer's DNA matched the DNA found on Marie's vaginal and cervical slides.

Also in 2002, Leer's fiancée,[1] Crystal Lam, learned from Leer's brother that Leer had previously been involved in a sexual relationship with Marie.

---

[1] Apparently, Leer was divorced from the woman to whom he had been married at the time of Marie's death.

When Lam confronted Leer with this information, Leer told her that he had had sexual intercourse with Marie the night she disappeared. According to Leer, his car got stuck in the snow that night, and he went to Marie's house between twelve and one o'clock in the morning to see if her brother could help him. Marie answered the door and told him that her brother was sleeping but that she could help. They walked to his car, got it out of the snow, and had sexual intercourse. Marie then accompanied Leer to pick up a friend. On the way back to Marie's house, the friend and Marie got into an argument when the friend insulted Marie's brother, and the friend used Leer's twelve-gauge shotgun to shoot Marie.

The friend told Leer to stop the car, and the friend dragged Marie into a field. Leer heard another gunshot, and the friend came back to the car and told Leer to drive away. The friend had Marie's coat and asked Leer to pull into a nearby church parking lot where the friend left the coat. Thinking that she was helping Leer, Lam told Leer's story to the police. Leer was subsequently charged with and convicted of murder. He did not testify at trial and never named the friend that allegedly killed Marie.

*Leer v. State*, No. 02A04-0412-CR-701, 846 N.E.2d 374 (Ind. Ct. App. April 18, 2006), slip op. at 2-5.

On October 8, 2004, following a jury trial, Leer was convicted of murdering Marie Kline. His conviction was affirmed by this court upon direct appeal, as set out above. On July 11, 2008, Leer, pro se, filed a PCR petition. The Indiana Public Defender entered its appearance on Leer's behalf, after which Leer's petition was amended. Following an evidentiary hearing, the post-conviction court denied Leer's petition on March 19, 2012.

In a post-conviction proceeding such as this, the petitioner bears the burden of establishing his claims for relief by a preponderance of the evidence. *Kubsch v. State*, 934

4

N.E.2d 1138 (Ind. 2010). When appealing from the denial of a PCR petition, the petitioner stands in the position of one appealing from a negative judgment and therefore must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* We further observe that the post-conviction court is the sole judge of the weight of the evidence and credibility of witnesses. *Fisher v. State*, 810 N.E.2d 674 (Ind. 2004). Therefore, its findings and judgment will be reversed only upon a showing of clear error, i.e., that which leaves us with a definite and firm conviction that a mistake has been made. *Kubsch v. State*, 934 N.E.2d 1138.

Leer was convicted in 1988 of attempted murder as a class A felony and sentenced to forty years imprisonment. Following his 2004 conviction for murder, the trial court sentenced Leer to sixty years imprisonment, to be served consecutively to the forty-year sentence for the 1988 conviction. In his unsuccessful direct appeal of the 2004 conviction, Leer presented four issues for review, but did not challenge the consecutive aspect of his sentence.

In the present appeal of the denial of his PCR petition, Leer contends trial and appellate counsel rendered ineffective assistance in failing to challenge the trial court's order to impose his sixty-year sentence in the present case consecutively to the forty-year sentence in the 1988 case. Leer was represented by the same attorney both at trial and upon direct appeal and presents his argument in the form of ineffective assistance of both trial and appellate counsel. We note, however, that this is not a scenario in which trial counsel is required, or even expected, to lodge an objection. *See Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006) ("[c]ounsel need not object to preserve a sentencing error for review").

5

Therefore, we will analyze this issue as involving a claim of ineffective assistance of appellate counsel.

A claim of ineffective assistance of appellate counsel is evaluated using the standard articulated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). *Hampton v. State,* 961 N.E.2d 480 (Ind. 2012). In order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice. *Id.* In applying this standard, we ask whether, in view of all the circumstances, counsel's actions were "reasonable ... under prevailing professional norms." *Strickland v. Washington,* 466 U.S. at 688. Our scrutiny of counsel's performance must be "highly deferential." *Hampton v. State,* 961 N.E.2d at 491 (quoting *Strickland v. Washington,* 466 U.S. at 689). Moreover, even if we deem appellate counsel's performance to be deficient, the petitioner will not prevail unless he or she demonstrates "a reasonable probability that the outcome of the direct appeal would have been different." *Id.*

We begin with an inquiry into whether consecutive sentences were authorized in Leer's case at the time of sentencing. The authority to impose consecutive sentences is granted by Ind. Code Ann. § 35-50-1-2 (West, Westlaw current with all 2012 legislation). "The general rule is that the sentence in effect at the time of the commission of the crime is the proper penalty." *Richards v. State*, 681 N.E.2d 208, 213 (Ind. 1997). Therefore, we must determine whether the version of I.C. § 35-50-1-2 in effect at the time Leer committed the murder authorized consecutive sentences in the manner imposed by the trial court.

I.C. § 35-50-1-2 contains provisions pertaining to discretionary consecutive sentences

6

(found in subsection (a) at the time Leer committed this offense) and mandatory consecutive sentences (subsection (b) at the time). The discretionary provision applies here. Both parties agree that on December 29, 1987, I.C. § 35-50-1-2 conferred upon trial courts the discretion to order that two sentences be served consecutively even if those two sentences were not imposed contemporaneously. *See, e.g.*, *Hutchinson v. State*, 477 N.E.2d 850 (Ind. 1985). That changed, however, with our Supreme Court's decision in *Kendrick v. State*, 529 N.E.2d 1311 (Ind. 1988). In *Kendrick*, upon petition for post-conviction relief, the appellant sought to withdraw a guilty plea on grounds that he was not advised that as a consequence of his plea, he might in later cases be ordered to serve those sentences consecutively to the one he would then be serving. The Supreme Court affirmed the post-conviction court's denial of the PCR petition. In so doing, the Court concluded – for the first time – that a court could impose consecutive sentences under I.C. § 35-50-1-2 only when said sentences were imposed contemporaneously with each other. The Court explained:

> The language employed in Section (a) above by the legislature is restrictive. The general authority is limited to those occasions when a court is meting out two or more terms of imprisonment. If a court is contemporaneously imposing two or more sentences, it is granted the general statutory authority to order them to be served consecutive to one another. Section (a) does no more than this.

*Kendrick v. State*, 529 N.E.2d at 1312.[2]

As indicated above, *Kendrick* was decided after Leer committed the present offense and thus was not the law applicable to his sentence at the time. Leer claims, however, that the court "was required to sentence Leer in accordance with *Kendrick v. State*" because in

7

*Bartruff v. State*, 553 N.E.2d 485 (Ind. 1990) and *Seay v. State*, 550 N.E.2d 1284 (Ind. 1990), the Supreme Court determined that the defendants in those cases should have been sentenced consistent with the principles announced in *Kendrick* even though, as here, they committed their respective crimes before *Kendrick* was decided. Leer also directs our attention to a case of even more recent vintage, *Stites v. State*, 829 N.E.2d 527 (Ind. 2005), in support of this argument.

In *Stites*, in approximately1985, the defendant/appellant pled guilty to murder in an agreement calling for Stites to serve a term of forty years imprisonment, to run consecutively to a sentence imposed previously for a separate conviction. As part of the plea agreement, the State agreed not to seek the death penalty. In 2002, Stites filed a petition for post-conviction relief, alleging that her murder sentence was illegal because the trial court lacked authority to order the sentence to be served consecutively to any other sentence. The post-conviction court denied the petition following a hearing. The Supreme Court affirmed that decision on grounds that Stites could not enter a plea agreement calling for an illegal sentence, benefit from that sentence, and then later complain that it was an illegal sentence. In so doing, however, the Court noted, citing *Kendrick*, "[a]t the time Stites committed the offense the statute governing consecutive sentences was limited to those occasions where the court was meting out two or more terms of imprisonment at one time." *Id*. at 529. *Stites* thus established that, for purposes of post-conviction review, cases decided before *Kendrick* were nonetheless subject to the *Kendrick* holding that a court could order sentences to run

---

[2] In 1994, the General Assembly modified I.C. § 35-50-1-2 and impliedly overruled this aspect of *Kendrick*. The relevant portion of the statute now reads, "The court may order terms of imprisonment to be served

consecutively under I.C. § 35-50-1-2(a) only if those sentences were being imposed at the same time. This is true regardless of the fact that the law was otherwise before *Kendrick*, *i.e.*, regardless of whether consecutive sentences were authorized by *Hutchinson* at the time the defendant committed the offense in question. *Stites* also renders irrelevant the State's claim that a subsequent revision to I.C. § 35-50-1-2, which effectively overruled *Kendrick* and reinstated the *Hutchinson* view of consecutive sentencing, rendered *Kendrick* a mistake that we need not follow. Although the statute was amended, it occurred before *Stites* was decided and thus was within the contemplation of the Supreme Court when it held in 2005 that *Kendrick* applied to a sentence imposed in 1985.

Therefore, pursuant to *Stites*, with respect to crimes committed before I.C. § 35-50-1-2 was amended in 1994, *Kendrick* forbade ordering two or more sentences to run consecutively unless those sentences were imposed at the same time. We now turn to the dispositive question in this case, which is – did appellate counsel render ineffective assistance of counsel in failing to challenge Leer's consecutive sentences in 2005 on the basis of *Kendrick*? We conclude that he did, based primarily upon a case even more closely analogous to the present case than *Stites*.

In *Nuckles v. State*, 691 N.E.2d 211 (Ind. Ct. App. 1998), the defendant was convicted of attempted murder and theft, and determined to be a habitual offender. The court ordered that the sentences for those offenses would be served consecutively to the sentence imposed with respect to an earlier, separate conviction. The issue of consecutive sentencing was not presented in Nuckles's direct appeal. Upon post-conviction relief, Nuckles claimed that

consecutively even if the sentences are not imposed at the same time." I.C. § 35-50-1-2 (c)(2).

9

appellate counsel rendered ineffective assistance of counsel in failing to present the issue. The situation in *Nuckles* resembles the one before us in the present case in every relevant respect. Nuckles committed his crimes in 1987. He was convicted and sentenced for those offenses before November 1988. Thus, Nuckles and Leer committed their offenses after *Hutchinson* but before *Kendrick* was decided. Both received sentences that were imposed consecutively to a sentence imposed in a separate, unrelated cause. Both filed direct appeals of their convictions after *Kendrick*, but did not challenge the imposition of consecutive sentences. Both appealed their consecutive sentences upon post-conviction relief on grounds that appellate counsel rendered ineffective assistance of counsel in failing to challenge the imposition of consecutive sentences upon direct appeal. The post-conviction court denied their petitions in both cases.

In *Nuckles,* the court noted that because the issue was waived for failure to present it upon direct appeal, the appellant could succeed only if he established that appellate counsel's failure to present the issue constituted fundamental error. The court held that it did, explaining:

> At the time Nuckles was sentenced, the imposition of consecutive sentences such as the trial court ordered was not contrary to then-existing legal authority. Approximately six months after Nuckles's sentencing, however, our supreme court decided a case that arguably could have been interpreted as prohibiting the imposition of consecutive sentences except in those instances when the court was simultaneously imposing two or more sentences. *See Kendrick v. State,* 529 N.E.2d 1311 (Ind. 1988). The court later clarified that such was indeed the meaning of the holding in *Kendrick. See Weaver v. State,* 664 N.E.2d 1169 (Ind. 1996). Therefore, as later clarified in *Kendrick* and *Weaver,* the trial court erred in ordering that the sentences for the instant offenses be served consecutively to the sentence imposed for the prior offenses. Appellate counsel's failure to present the issue was of constitutional proportions because this court has determined that "fundamental error ... include[s] *illegal*

10

> *sentences in violation of express statutory authority* or an erroneous interpretation of a penalty provision." *Thompson v. State,* 634 N.E.2d 775, 777 (Ind. Ct. App. 1994) (emphasis in original).
>
> Because the error in imposing consecutive sentences constituted fundamental error not subject to waiver, appellate counsel's failure to present the issue constituted ineffective assistance of counsel.

*Nuckles v. State*, 691 N.E.2d at 215. We can find no meaningful distinction between the situation before the court in *Nuckles* and Leer's situation in the present case.

The State nevertheless contends, and the post-conviction court agreed, that even if *Kendrick* applies to this case, consecutive sentences were authorized by *Buell v. State*, 668 N.E.2d 251 (Ind. 1996) and *Elswick v. State*, 706 N.E.2d 592 (Ind. Ct. App. 1999). In *Buell*, the defendant was charged with murdering a woman and her daughter. A trial resulted in a guilty verdict with respect to the mother, but the jury was unable to reach a verdict with respect to the daughter. The defendant was retried for murdering the daughter and this trial resulted in a conviction. Both trials were conducted in the same court and before the same judge. The court ordered the sentence for the second conviction to be served consecutively to the sentence for the first conviction. The defendant challenged the imposition of consecutive sentences, citing *Kendrick* for the proposition that the trial court was not authorized to order that the sentences from the second trial be served consecutively to those imposed in the first trial. The Court rejected that argument, stating:

> Unlike the situation in *Kendrick,* the judge in this case imposed consecutive sentences for closely related offenses that were first charged in the same information and all tried in the same court. But for the hung jury and subsequent mistrial, the court would have sentenced Buell on all counts contemporaneously. We agree with the State that the rule of *Kendrick* does not apply. The court was authorized to impose consecutive sentences.

11

*Buell v. State*, 668 N.E.2d at 252.

In *Elswick*, while in jail and awaiting trial for the murder of one person and the attempted murder of another, the defendant attempted to arrange the murder of the victim of the attempted-murder charge. In separate jury trials before the same judge, the defendant was first convicted on the murder and attempted murder charges, and then convicted of conspiracy to murder the surviving victim. The trial court sentenced him to fifty years for the charge related to the attempted arranged murder and ordered that it be served consecutively to the sentences for murder and attempted murder. Citing *Kendrick,* the defendant challenged the imposition of consecutive sentences. The court rejected this challenge upon the following rationale.

> Here, the conspiracy conviction was closely related to Elswick's convictions for murder and attempted murder. Had Elswick succeeded in his conspiracy, he well might have avoided conviction of murder and attempted murder and would have accomplished the previously attempted murder of Kyle. In addition, the trial judge imposing the sentences presided over both trials.
>
> Consequently, we conclude that the facts of this case are more closely aligned with those in *Buell v. State.* In *Buell,* the supreme court made an exception to the strict rule in *Kendrick,* holding that the trial court has the discretionary power to order consecutive sentences for closely related offenses, tried in the same court even where the sentences are not imposed contemporaneously.

*Elswick v. State*, 706 N.E.2d at 594.

In the present case, the post-conviction court concluded that even if *Kendrick* applied in this case, *Buell* and *Elswick* "rejected the *per se* application of the 'contemporaneous rule'", *Appellant's Appendix* at 84, especially in cases of "'closely related offenses, tried in the same court even where the sentences are not imposed contemporaneously.'" *Id.* (quoting *Elswick v. State*, 706 N.E.2d at 594). The post-conviction court further concluded that Leer's

12

convictions fit within the exception carved out in *Buell* and *Elswick* because: "Both of [Leer's] cases were tried in the Elkhart Circuit Court. Although the judges differed, the facts of the prior conviction were known to both judges." *Appellant's Appendix* at 84. It appears the post-conviction court determined that the commonalities of Leer's separate convictions, i.e., that they emanated from the same court and, "[a]lthough the judges differed, the facts of the prior conviction were known to both judges", *id.*, bring this case within the *Buell* exception. We believe it takes more than this.

In the first place, in both *Buell* and *Elswick*, the same judge presided over both of the defendant's trials. That was not the case here, and it is not enough to cure the deficiency that the judges apparently "knew the facts of the prior conviction." *Id.* Second, and more importantly, the two cases in question must share more in common than the mere fact that they were tried in the same court. In both *Buell* and *Elswick*, the convictions whose sentences were imposed consecutively were interconnected, factually speaking. That does not appear to be the case with respect to Leer's convictions of murder and attempted murder. In fact, we find no indication that they share any commonalities other than that Leer was the perpetrator. If that were enough, not only would *Kendrick* be eviscerated, but there would be no practical limitation on the imposition of consecutive sentences in any case.

We conclude that *Kendrick* does apply and that the exception to *Kendrick* created in *Buell* and discussed in *Elswick* does not. Accordingly, we reverse the denial of Leer's PCR petition and remand with instructions to grant the petition and to correct his sentence to reflect that the sentence for murder is to be served concurrently with the earlier sentence for attempted murder.

13

Judgment reversed and remanded with instructions.

BROWN, J., and PYLE, J., concur.