**Lonnie K. BUELL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 28S00–9509–CR–1062.

Supreme Court of Indiana.

July 3, 1996.

Rehearing Denied Oct. 7, 1996.

Robert C. Price, Bloomington, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

Appellant Lonnie K. Buell stood charged in the abduction and killing of two women. A jury found him guilty in the death of Sharon Earle but could not reach a verdict concerning the killing of Lori Steed, who was Earle's daughter and appellant's girlfriend. A second jury later found him guilty of killing Steed. We affirm.

Buell, Steed, and Steed's young daughter lived in a trailer with Buell's wife and four children and Buell's friend Tom Ashton. There were many arguments.

Earle lived in a nearby trailer. On the night of February 5, 1993, Steed, Earle, and a friend named Pam Stephens went out for the evening at a bar in Linton. Buell and Ashton arrived at the bar and an argument ensued. Stephens called the police, and Buell and Ashton departed the bar promptly and went to the Buell trailer.

Earle and Steed eventually returned to Earle's trailer, whereupon Buell showed up with Ashton, ostensibly to ask Lori Steed to return to Buell's trailer. While Buell and Steed talked privately, Ashton tried to force Earle to have sex with him. Another fracas commenced, and Steed called the police. Buell and Ashton returned to Buell's trailer. There, they spent time drinking alcohol and "snorting crank." "Crank" is a slang term for methamphetamine. The two were discussing what to do about the women. Buell declared he was "going to show them what an ass-beating was" and Ashton agreed to go with him.

The two men returned to Earle's trailer with Buell's wife Theresa following in a car. They dragged the two women out of the trailer and forced them into the vehicle. They drove to a local park, took the two women out of the car and began beating them both. Buell declared he would show them how to kill someone, then stood on Earle's throat, choking her with his steel-toed boot.

After disposing of Earle's body, Buell and Ashton became concerned that Steed might go to the police. They drove Steed to a field in Midland, Indiana. There, in a small shelter, Ashton beat her with a board and Buell kicked her in the head and face. This beating killed her.

Buell was tried on various charges, and the jury found him guilty of voluntary manslaughter, a class B felony, Ind.Code Ann. § 35–42–1–1(1) (West Supp.1993), in the killing of Sharon Earle. It also found that he committed criminal confinement, a class B felony, Ind.Code Ann. § 35–42–3–3 (West Supp.1993). The jury could not reach a verdict on the other counts and the court declared a mistrial on the other counts. The sentence for the first two convictions was twenty years on each count, to be served consecutively.

A second jury subsequently found Buell guilty of murdering Lori Steed, Ind.Code Ann. § 35–42–1–1 (West Supp.1993), and of conspiring to murder Steed, a class A felony,

Ind.Code Ann. § 35–41–5–2 (West 1986). The court sentenced Buell to sixty years for murder and fifty years for conspiracy, to run consecutive to each other and to the sentences earlier imposed.

■ Appellant contends that the trial court was not authorized to order that the sentences from the second trial be served consecutive to those imposed in the first. He cites our decision in *Kendrick v. State,* 529 N.E.2d 1311 (Ind.1988). In that case, a defendant pled guilty in one courtroom and later received a consecutive sentence for unrelated charges in another courtroom. We held that a court's authority to order consecutive sentences, granted by Ind.Code Ann. § 35–50–1–2(a),[1] "is limited to those occasions when a court is meting out two or more terms of imprisonment. If a court is contemporaneously imposing two or more sentences, it is granted the general statutory authority to order them to be served consecutive to one another." *Kendrick,* 529 N.E.2d at 1312.

Unlike the situation in *Kendrick,* the judge in this case imposed consecutive sentences for closely related offenses that were first charged in the same information and all tried in the same court. But for the hung jury and subsequent mistrial, the court would have sentenced Buell on all counts contemporaneously. We agree with the State that the rule of *Kendrick* does not apply. The court was authorized to impose consecutive sentences.

■ Buell also challenges his conviction for conspiring with Ashton to kill Lori Steed. He says that the record does not contain adequate evidence of an agreement to kill her. Ashton testified, however, that while Buell, Buell's wife, and Ashton were transporting Steed to Midland, the following discussion occurred:

Q. Are there discussions at this point about what to do next?

A. Lonnie just told us for us to be quiet he had to think.

Q. So what happened?

---

1. West Supp.1993. The statute subsequently has been modified. Pub.L. 164–1994, 1994 Ind. Acts 1880; Pub.L. 304–1995, 1995 Ind. Acts 4168.

A. We all agreed Lori had to go.

Q. What do you mean by that?

A. Just agreed she had to go.

Q. What do you mean by that?

A. She had to be killed.

Q. Who all agreed?

A. Lonnie, Theresa and me.

R. at 797. These statements were adequate to support a jury's determination that Buell and Ashton conspired to kill Steed.

 Finally, appellant contends that the evidence about Buell and Ashton "snorting crank" while discussing what to do with Steed and Earle violated Ind. Evidence Rule 404(b) as evidence of illegal acts used to show Buell's bad character and to suggest action in conformity therewith. Assuming only for the sake of argument that this was error, it is apparent on the strength of the evidence against Buell that admission did not prejudice his substantial rights and thus does not warrant reversal. *Fleener v. State,* 656 N.E.2d 1140 (Ind.1995).

We therefore affirm the judgment of the trial court.

DeBRULER, DICKSON, SULLIVAN and SELBY, JJ., concur.