Johnie E. DAVIDSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 22S01–0101–PC–42.

Supreme Court of Indiana.

Feb. 19, 2002.

Susan K. Carpenter, Public Defender of Indiana, C. Brent Martin, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

Johnie E. Davidson was tried in a single proceeding for several different crimes occurring in four separate instances at four different locations. After being found guilty of all charges except one, he was given consecutive sentences totaling 81 years. On appeal from the denial of post-conviction relief, the Court of Appeals found Davidson's trial counsel ineffective for failing to move for separate trials that, if granted, would have prevented the imposition of consecutive sentences. *Davidson v. State*, 735 N.E.2d 325, 329 (Ind.Ct.App. 2000). Although we agree with the Court of Appeals that a severance could have precluded consecutive sentences under the then-governing law, we believe Davidson's counsel's failure to seek a severance was not substandard performance under the circumstances.

### Factual and Procedural Background

In January 1989, Davidson was charged with committing a variety of crimes against four different victims on four separate occasions at four different locations. Davidson was accused of the following:

(1) On December 4, 1988, Davidson entered Ace Food Mart in New Albany, Indiana and demanded money from cashier Hope Stephens. After Stephens gave Davidson approximately $350–400, Davidson fled. Davidson was charged with robbery.

(2) On December 22, 1988, Davidson entered Swifty Food Mart in New Albany, placed a pistol on the counter, and demanded money from cashier Sandra Casey. Casey gave him money and Davidson left the store. Davidson was charged with robbery.

(3) On January 1, 1989, at approximately 3:00 a.m., Davidson approached Dr. George Raque in the parking lot of a hospital in Louisville, Kentucky. Davidson ordered Raque at gunpoint to get in his car and drive. After the car crossed over the Ohio River into Indiana, Davidson demanded money, but Raque had only $10 or $12. Davidson then ordered Raque out of the car in a dead-end alley in New Albany. Raque tried to escape, Davidson hit him in the head with his gun, and the two returned to the car.

As Davidson was entering, Raque drove off. Davidson was charged with attempted robbery, criminal confinement, and battery.

(4) On January 1, 1989, at about 4:00 or 5:00 a.m., Edwin McClure had just left Moore's Supermarket in New Albany and was placing his groceries on the seat of his vehicle when Davidson approached him with a gun in his hand and ordered him to get in the car. McClure fled as Davidson was getting into the car. Davidson was charged with attempted robbery.

In March 1989, Davidson was tried on all these charges in a single proceeding. Davidson's attorney attempted to show that the victims gave substantially different descriptions of the perpetrator and that the police rushed to judgment in order to solve this string of robberies. One victim reported the perpetrator was 5′4″ to 5′6″ with "dark black" skin, while another victim described the perpetrator as 5′9″ to 5′10″ with "medium black" skin. One victim told the police the perpetrator had the gun in his left hand while another victim described the perpetrator as right-handed. Dr. Raque reported the perpetrator had some facial hair, like a goatee or a "little mustache [that] go[es] around the mouth," a dark colored jacket, and a hat. On the other hand, McClure, who was allegedly approached by the perpetrator within hours of Raque, described the perpetrator as having no facial hair, a light blue dress jacket or suit coat, and no hat.

Davidson was found guilty of all counts except the robbery at the Ace Food Mart. He was sentenced to the maximum sentence on each count with all time to be served consecutively—a collective sentence of 81 years. The Court of Appeals affirmed the convictions. *Davidson v. State,* 557 N.E.2d 8 (Ind.Ct.App.1990).

Davidson sought postconviction relief contending: (1) his trial counsel was ineffective for failing to move for separate trials which, if granted, would have prevented the imposition of consecutive sentences; (2) his trial counsel was ineffective for failing to object to the trial court's use of impermissible aggravators to impose the maximum possible sentence; and (3) his appellate counsel was ineffective for failing to raise these two issues on direct appeal. The postconviction court denied relief.

On appeal, the Court of Appeals concluded that Davidson's counsel's failure to move for a severance was substandard performance and resulted in consecutive sentences that could not have been imposed in separate trials. *Davidson,* 735 N.E.2d at 329. The Court of Appeals reversed and remanded the case to the trial court with instructions to vacate the order directing Davidson to serve consecutive sentences. *Id.* at 329–30. We granted the State's petition to transfer to address the severance issue.

### Standard of Review

A postconviction relief proceeding "is not a substitute for trial and appeal, but is a process for raising issues which were unknown or not available at trial." *State v. Hollon,* 494 N.E.2d 280, 282 (Ind. 1986). Davidson bore the burden in the postconviction court of establishing the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). Because Davidson appeals from a negative judgment delivered by the postconviction court, this Court will reverse the denial of postconviction relief only if the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court. *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995). In this review, findings of fact are accepted unless "clearly erroneous," Ind. Trial Rule 52(A), but no deference is

accorded conclusions of law. *State v. Van Cleave,* 674 N.E.2d 1293, 1295–96 (Ind. 1996). The postconviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *See, e.g., Stewart v. State,* 517 N.E.2d 1230, 1231 (Ind.1988).

## I. Ineffective Assistance of Trial Counsel

■ Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694, 104 S.Ct. 2052; *Lowery v. State,* 640 N.E.2d 1031, 1041 (Ind.1994).

Davidson contends that both prongs of the *Strickland* test are met. First, he argues that his counsel's performance was below an objective level of reasonableness because his counsel did not seek separate trials on the four sets of charges. Second, Davidson contends that the result of the proceeding would have been different because if he had been granted separate trials and found guilty at all four trials, the sentence he would have received would not have exceeded 41 years. At the time of Davidson's trial, this Court had held that a trial court could order sentences to be served consecutively only if the court was contemporaneously imposing two or more sentences. *Kendrick v. State,* 529 N.E.2d 1311, 1312 (Ind.1988). In *Kendrick,* the defendant pleaded guilty to one of several counts pending in a single case in the Marion County Superior Court, Division One. In exchange for this plea, the other charges in this single cause were dropped. At the same time, there were other charges pending against the defendant in another division of the Marion County Superior Court, but those charges were not mentioned in the plea agreement or at the plea proceeding in Division One. The court accepted the plea without fulfilling its statutory duty of advising the defendant of the possibility of consecutive sentences. Following the imposition of the sentence in Division One, the defendant entered another guilty plea to the other pending charges and received two sentences to run consecutive to one another and consecutive to the sentence given by the Division One Court. The defendant sought to withdraw his guilty plea in Division One because he had not been advised that he could receive later sentences that could be ordered to run consecutively to the one he would then be serving. *Id.* at 1311.

At the time *Kendrick* was decided, an Indiana statute provided, "[T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively." Ind.Code § 35–50–1–2(a) (1988). This Court in *Kendrick* held that the trial court's authority to impose consecutive sentences arises only (1) when it has a mandatory duty to do so under section 35–50–1–2(b) or (2) "when a court is meting out two or more terms of imprisonment." *Kendrick,* 529 N.E.2d at 1312. Accordingly, in *Kendrick,* the Division One Court had no authority to impose consecutive sentences because it was not meting out two or more terms of imprisonment. *Id.*

The *Kendrick* rule was bolstered by another case involving two trials for four separate sales of controlled substances. *Seay v. State,* 550 N.E.2d 1284 (Ind.1990). In *Seay,* the defendant made four separate sales to a police informant and an undercover police officer. The defendant was

charged with two counts of dealing in a controlled substance based on sales made on July 14, 1986 and August 4, 1986. He was tried and convicted of those charges in February 1987. While the jury was deliberating his case, the State filed charges on the other two sales of controlled substances, one occurring on August 14, 1986 and the other on September 2, 1986. *Id.* at 1286. Those charges were tried in August 1987 and resulted in two consecutive sentences, both of which were ordered to be served consecutively to the sentences imposed by his February trial. *Id.* at 1286–87. Citing *Kendrick*, this Court concluded that the trial court in the defendant's second case acted beyond the scope of its authority in ordering the sentence to be served consecutively to that imposed by the trial court in the first case. *Id.* at 1289. This Court concluded:

> The trial court [in the second case] was fully authorized to order its sentence in Count II to be served consecutively to its sentence in Count I since these were contemporaneously before the court. However, the sentence [defendant] had previously received from another court in another cause was not a proper subject for this court's consideration in determining the propriety of consecutive sentences, and the court acted beyond the scope of its authority when it ordered the commencement of the instant sentence to be postponed until the completion of the sentence imposed in [the first case].

*Id.; see also Bartruff v. State,* 553 N.E.2d 485, 488 (Ind.1990) (The discretionary authority to give consecutive sentences is "limited to situations in which the trial court is contemporaneously imposing the two sentences to be served consecutively.").

*Kendrick* and its progeny are no longer the law by reason of 1994 amendments to

the statute governing consecutive sentences. Ind.Code § 35–50–1–2(c) (1998). However, at the time Davidson was tried in 1989, it was settled precedent from this Court that a sentence could not be ordered to be served consecutively to another sentence entered by another court. *Kendrick,* 529 N.E.2d at 1312.

Justice Sullivan points to *Buell v. State,* 668 N.E.2d 251 (Ind.1996) and *Elswick v. State,* 706 N.E.2d 592 (Ind.Ct.App.1999), *trans. denied,* for the proposition that *Kendrick* is not applicable to this case because the charges upon which the sentences were imposed were of similar character and were charged in the same information. In *Buell,* the defendant was charged in the abduction and killing of his girlfriend and his girlfriend's mother. 668 N.E.2d at 251–52. The jury found the defendant guilty of voluntary manslaughter of the mother, but could not reach a verdict concerning the murder of his girlfriend. A mistrial was declared by the court on that issue. Subsequently, the defendant was tried a second time by a different jury for murdering and conspiring to murder his girlfriend. The second jury found the defendant guilty of both charges. The sentences from the second trial were to run consecutively to the sentences earlier imposed. This Court held that *Kendrick* did not apply because the judge imposed "consecutive sentences for closely related offenses that were first charged in the same information and all tried in the same court." *Id.* at 252. This Court noted, "But for the hung jury and subsequent mistrial, the court would have sentenced [the defendant] on all counts contemporaneously." *Id. See also Elswick,* 706 N.E.2d at 595 (holding *Kendrick* inapplicable because the defendant's conspiracy conviction was closely related to the murder and attempted murder convictions and because the trial judge impos-

ing the sentences presided over both trials).

Davidson's situation is wholly unlike *Buell*. The defendant in *Buell* was charged with multiple counts arising from the same incident. He had no statutory right to insist on separate trials, and the retrial that produced additional consecutive sentences was properly viewed as an extension of the trial that produced the first sentence. In contrast, Davidson was faced with four unrelated incidents and had a right to demand separate trials. Indeed, Indiana Code section 35–34–1–11(a) provides, "Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have the right to a severance of the offenses." Ind.Code § 35–34–1–11(a) (1998).

The facts in *Elswick v. State*, 706 N.E.2d 592 (Ind.Ct.App.1999), *trans. denied*, demonstrate the problem in a broad application of the rule that a separate sentencing procedure cannot result in a consecutive sentence. If consecutive sentences are impossible, short of the risk of the death penalty or life without parole, a defendant like Elswick, faced with a murder charge, has no incentive to avoid other crimes, including attempts to intimidate or even kill witnesses, as long as those crimes carry only equal or shorter penalties. Presumably for that reason the statutory underpinning of *Kendrick* has been removed. The Court of Appeals in *Elswick* distinguished *Kendrick* on the grounds that the second crime was a conspiracy to kill a witness in the first, and was therefore "closely related" to the first crime. Even if this was a valid distinction under the *Kendrick* regime, it is inapplicable to Davidson, whose crimes were related only in the sense that they were repetitive and similar. The same is true in *Seay*, and

*Elswick* offers no more support than *Buell* for the proposition that Davidson, if given separate trials, could suffer consecutive sentences under *Kendrick*. We conclude that the law at the time of Davidson's trial was as the Court of Appeals in this case declared it, and failure to seek a severance was a blunder of major consequence unless justified by some strategy.

■ Given that *Kendrick* was the law in 1989, unless there was some good reason to permit a trial of all counts, it seems obvious that separate trials would give a defendant the advantage of avoiding the risk of cumulative accusations, and also provide the prospect of a requirement under *Kendrick* that the sentences not be imposed consecutively. However, we do not agree with the apparent implication of the Court of Appeals that failure to seek a severance is virtually per se incompetent representation. Given the result of the joint trial, it is clear that Davidson would have been better off if separate trials had been demanded. However, we think this issue, like any other claim of substandard performance, must be evaluated in light of the information and choices available to counsel at the time, not in hindsight.

■ A reviewing court "will not second-guess the propriety of trial counsel's tactics." *Lowery*, 640 N.E.2d at 1041. It is well established that "trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness." *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind.1998). "This is so even when 'such choices may be subject to criticism or the choice ultimately prove detrimental to the defendant.'" *Id.* (quoting *Garrett v. State*, 602 N.E.2d 139, 142 (Ind.1992)).

■ At trial, the defense sought to make much of the differences in descriptions of the perpetrators of the four separate robberies, suggesting that the State, in its zeal to get a conviction, had seized the wrong man. Stephens reported that the perpetrator was about 5′9″ or 5′10″ with short hair, "medium black" skin, and no facial hair. She also stated to police that the perpetrator held the gun in his left hand. Casey described the perpetrator as about 5′4″ to 5′6″ with "close cut hair," "dark black" skin, and a pockmarked face. Raque testified that the perpetrator held the gun in his right hand. He also reported that the perpetrator was about 5′9″ with "puffy" hair, some facial hair that looked like a goatee or a "little mustache [that] go[es] around the mouth," wore a dark colored jacket and a hat. McClure, who was allegedly approached by the perpetrator within hours of Raque, testified that the perpetrator was about 5′6″ to 5′7″ with his hair like it was at trial (not cut for more than six months), a pockmarked face, no facial hair, a light blue dress jacket or suit coat, and no hat. Based on these inconsistent descriptions, Davidson's counsel argued that the police were under a great deal of pressure to find the person or persons who committed these crimes and rushed to judgment in charging Davidson. Indeed, trial counsel was successful in gaining an acquittal for the robbery at Ace Food Mart.

The postconviction testimony from trial counsel was that (1) he was sure he would have considered a severance; (2) he did not recall his ruminations on that subject; and (3) he did not recall the law at the time on the consecutive sentences. The mere fact that counsel could not remember the events from eleven years ago does not establish deficient performance. *See, e.g.,* *Howey v. State,* 557 N.E.2d 1326, 1330 (Ind.1990). The postconviction court made no specific finding as to whether the decision was the product of strategy or oversight, but denied relief on the basis that trial counsel provided effective representation. On this record we cannot say that finding was unsupportable, and we therefore find Davidson has not met the first prong of the Strickland test.

## II. Ineffective Assistance of Appellate Counsel

■ This Court has noted that appellate counsel is not obligated to look outside the record for possible claims of error before counsel's performance will be considered constitutionally effective. *Woods v. State,* 701 N.E.2d 1208, 1221–22 (Ind. 1998). Because an examination of Davidson's trial counsel's strategy would require evidence outside the trial record, appellate counsel cannot be deemed ineffective for failing to raise the issue on direct appeal and thereby preserving it for postconviction proceedings.

## Conclusion

Davidson fails to establish ineffective assistance of either his trial or appellate counsel. Pursuant to Indiana Appellate Rule 58(A)(2), we summarily affirm the Court of Appeals decision affirming the postconviction court's denial of Davidson's claim of ineffective assistance of counsel for failure to challenge the aggravating circumstances used by the trial court to justify the sentence imposed. The judgment of the postconviction court is affirmed.

DICKSON, and RUCKER, JJ., concur.

SULLIVAN, J., concurs in result with separate opinion in which SHEPARD, C.J., concurs.

SULLIVAN, Justice, concurring in result.

I believe the proper application of *Kendrick* to the case before us is demonstrat-

ed by our opinion in *Buell v. State*, 668 N.E.2d 251 (Ind.1996), *reh'g denied*, and Chief Judge Sharpnack's opinion in *Elswick v. State*, 706 N.E.2d 592 (Ind.Ct. App.1999), *transfer denied*.

The *Kendrick* case was an appeal of a judgment denying permission to withdraw a guilty plea. The defendant had pled guilty to one of several counts pending in a single case in Marion Superior Court, Division One. At the time of the plea, there were other charges pending against the defendant in another division of the Marion Superior Court, but those charges were not noted in the plea agreement or the plea proceeding in Division One. The Division One court accepted the plea but did not advise the defendant of the possibility that he could receive consecutive sentences for the charge covered by the plea and the charges pending in the other division. An advisement as to the possibility of any consecutive sentences was required by statute. *Kendrick*, 529 N.E.2d at 1311.

Kendrick later sought to withdraw the guilty plea made in Division One because of the lack of any advice that as a consequence of the plea, he would face the possibility that later sentences in the other division could be imposed consecutive to the one he would then be serving.

At the time *Kendrick* was decided, the imposition of consecutive sentences was controlled by a statute that provided, "the court shall determine whether terms of imprisonment shall be served concurrently or consecutively." Ind.Code § 35–50–1–2(a) (1988).[1] We held that the authority given trial courts by this language to be "restrictive." *Kendrick*, 529 N.E.2d at 1312. A trial court could impose consecutive sentences only (1) when it had a man-

datory duty to do so under Ind.Code § 35–50–1–2(b) or (2) "when a court [was] meting out two or more terms of imprisonment." *Id.* We said, "If a court is contemporaneously imposing two or more sentences, it is granted the general statutory authority to order them to be served consecutive to one another." *Id.*

We held that because the Division One court was not meting out two or more terms of imprisonment, it had had no authority to impose consecutive sentences and therefore no duty to advise the defendant of the possibility thereof. *Id.*

While the result in *Kendrick* was that the defendant was denied his request to set aside his guilty plea, the implication was that a court, except where expressly required to do so by statute, could not impose a sentence consecutive to one imposed by another court at another time. Two cases decided in 1990 confirmed that. *Seay v. State* 550 N.E.2d 1284, 1286 (Ind. 1990); *Bartruff v. State*, 553 N.E.2d 485, 487–88 (Ind.1990).

To return to Davidson's case, I acknowledge that "contemporaneously imposing" language of *Kendrick*, *Seay*, and *Bartruff* could lead one to the conclusion that had Davidson been tried separately, the trial courts in each of the separate cases would have been unable to impose sentences consecutive to those imposed in the other cases. But this would give the contemporaneity requirement too literal an interpretation, as subsequent cases have made clear.

The first of these cases is *Buell v. State*, 668 N.E.2d 251 (Ind.1996), *reh'g denied*. The defendant had been found guilty of voluntary manslaughter and confinement

---

1. This statute has been substantially amended such the interpretation given it in *Kendrick* no longer applies. *See Berry v. State*, 689 N.E.2d 444, 446 (Ind.1997); *Weaver v. State*, 664 N.E.2d 1169, 1170–71 (Ind.1996).

but the jury could not reach a verdict on several additional counts including murder and conspiracy and the court declared a mistrial on those other counts. The trial court proceeded to impose consecutive sentences for the voluntary manslaughter and confinement convictions. *Id.* at 252.

A second jury subsequently found the defendant guilty of murder and conspiracy and the trial court imposed sentences on those counts, to run consecutive to each other and to the sentences earlier imposed. *Id.*

On appeal, the defendant argued that under *Kendrick,* the trial court was not authorized to order that the sentences from the second trial be served consecutive to those imposed in the first. *Id.* We found that to be too near-sighted a reading of *Kendrick:*

> Unlike the situation in *Kendrick,* the judge in this case imposed consecutive sentences for closely related offenses that were first charged in the same information and all tried in the same court. But for the hung jury and subsequent mistrial, the court would have sentenced [the defendant] on all counts contemporaneously. We agree with the State that the rule of *Kendrick* does not apply. The court was authorized to impose consecutive sentences.

*Id.*

The second of these cases is *Elswick v. State* where the defendant appealed his sentence for conspiracy to commit murder. 706 N.E.2d 592 (Ind.Ct.App.1999), *transfer denied.*

While jailed awaiting trial for the murder of one man and the attempted murder of another man named Kyle, the defendant attempted to arrange the murder of witness-victim Kyle. In separate jury trials before Judge Duffin, the defendant was first convicted on the murder and attempt-

ed murder charges, for which he was sentenced to consecutive terms. He was then convicted of conspiracy to murder Kyle, for which he was sentenced consecutive to the sentences for murder and attempted murder. *Id.* at 593.

The defendant claimed that under *Kendrick,* Judge Duffin lacked authority to order his sentence for conspiracy to run consecutively to his prior convictions. *Id.*

In an opinion written by Chief Judge Sharpnack, the Court of Appeals found that *Kendrick* did not control:

> In each of the cases applying *Kendrick,* the trial court ordered a sentence to run consecutively to a sentence imposed at a different time, as in the case before us. However, in those cases the consecutive sentence was either tacked onto a sentence for an unrelated crime or was imposed by a different court. Here, the conspiracy conviction was closely related to [the defendant's] convictions for murder and attempted murder. Had [the defendant] succeeded in his conspiracy, he well might have avoided conviction of murder and attempted murder and would have accomplished the previously attempted murder of Kyle. In addition, the trial judge imposing the sentences presided over both trials.

*Id.* at 594.

The Court of Appeals concluded that the principles enunciated in *Buell* applied:

> Unlike *Kendrick* and its progeny, the two causes here were closely related sharing a strong factual connection. Furthermore, because he had tried both cases, the facts of each case were before Judge Duffin when he ordered the consecutive sentence. Therefore, we hold that, under *Buell,* the trial court was within its discretion under Ind.Code § 35–50–1–2(a) to order [the defendant's] sentence for conspiracy to commit murder to run consecutively to his

sentences for murder and attempted murder.

*Id.* at 595.

I believe that *Buell* and *Elswick* make clear that Davidson is not entitled to sentencing relief. The charges upon which the sentences at issue were imposed are of similar character and were charged in the same information. Even had Davidson been tried separately, there is no reason to think that he would not have been tried in the same court before the same judge. These factors indicate that the *Kendrick* rule is not applicable here.

SHEPARD, C.J., concurs.