

**FILED**
Aug 18 2015, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

<table>
<tr><td>

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

</td><td>

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

</td></tr>
</table>

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Steele,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 18, 2015<br><br>Court of Appeals Case No.<br>49A02-1408-CR-585<br><br>Appeal from the Marion Superior Court;<br>The Honorable Clayton Graham, Judge;<br>49G17-1307-FD-45117 |

**May, Judge.**

[1] Richard Steele appeals his conviction of Class D felony domestic battery.[1] On appeal, Steele raises the following restated issues: whether the trial court abused its discretion when it admitted testimony and a medical report from a forensic nurse examiner; whether the evidence is sufficient to support Steele's conviction; and whether Steele's convictions subjected him to double jeopardy.

[2] We affirm.

## Facts and Procedural History

[3] On June 25, 2013, Steele punched S.M., his girlfriend of twenty years, in the face. R.S., their twelve-year-old daughter, was present when the battery occurred.

[4] The next day, S.M. went to the emergency room at Methodist Hospital because pain, swelling, and bruising around her eye rendered her incapable of looking down. The nurse who initially assessed S.M. requested a consultation with Nicolette Baer, a forensic nurse examiner who is contacted when violence is suspected as the cause of a patient's injury. With S.M.'s permission, Baer noted the precise location of all of S.M.'s injuries and compiled a forensic medical report. A police officer was present as Baer talked to S.M. During Baer's assessment, S.M. reported Steele punched her and R.S. interjected that Steele slapped and punched her mother in the face. The after-care instructions on the

---

[1] Ind. Code 35-42-2-1.3 (2012) (defining battery as a Class D felony when defendant and victim are spouses, live as spouses, or have a child together, and the offense was knowingly committed in the presence of a child under age sixteen).

forensic medical report, which was provided to S.M. at discharge from the hospital, included Baer's contact information and indicated S.M. should contact a domestic violence shelter and seek counseling. (Ex. at 34.)

[5] The State charged Steele with one count of Class A misdemeanor domestic battery,[2] one count of Class D felony domestic battery, one count of Class A misdemeanor battery,[3] and two counts of Class D felony battery.[4]

[6] At trial, S.M. testified she and Steele argued but her injury occurred when she tripped and hit her face on a table. R.S. was not called as a witness. The State called Baer who, over Steele's objection, testified both S.M. and R.S. reported to her that Steele punched S.M. The court also admitted, over Steele's objection, S.M.'s medical records, which included Baer's notes that indicated S.M. and R.S. reported Steele punched S.M.

[7] The jury returned a verdict of guilty on four counts. At the sentencing hearing, the court merged all the guilty findings into one conviction of Class D felony domestic battery and pronounced a 545-day sentence.

---

[2] Ind. Code § 35-42-2-1.3(a)(1-3) (2012) (defining battery as a Class A misdemeanor when defendant and victim are spouses, live as spouses, or have a child together).

[3] Ind. Code § 35-42-2-1(a)(1)(A) (2012) (defining battery as a Class A misdemeanor when it results in "bodily injury to any other person").

[4] Ind. Code § 35-42-2-1(a)(2)(M) (2012) (defining battery as a Class D felony if it results in injury to a "family or household member" and occurs in the presence of a child under age sixteen) ; Ind. Code § 35-42-2-1(a)(2)(D) (2012) (defining battery as Class D felony because Steele had a prior conviction of battering S.M.).

# Discussion and Decision

## *Admission of Evidence*

[8] The decision to admit or exclude evidence at trial is within a trial court's discretion, and we afford it great deference on appeal. *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013). A ruling will be reversed only if it is "clearly contrary to the logic and effect of the facts and circumstances of the case or misinterprets the law." *Id*.

[9] Steele asserts the court abused its discretion by admitting inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is inadmissible except as provided by law or other court rules. Ind. Evidence Rule 802.

[10] One exception is a statement made "for Purposes of Medical Diagnosis or Treatment." Ind. Evidence Rule 803(4). For hearsay to fall into this exception, it must: (1) be made by a person "seeking medical diagnosis or treatment"; (2) be "reasonably pertinent to diagnosis or treatment"; and (3) describe medical history, symptoms, pain or sensations and their inception or general cause. *Id*.

[11] This exception "reflects the idea that people are unlikely to lie to their doctors because doing so might jeopardize their opportunity to be made well." *VanPatten*, 986 N.E.2d at 260. To test whether the declarant's self-interest in obtaining effective medical treatment makes the hearsay report adequately reliable for admission, we determine: (1) whether the declarant was motivated

to provide truthful information to promote diagnosis and treatment and (2) whether the content of the statement was such that an expert in the field would reasonably rely on it when rendering diagnosis or treatment. *Id.*

[12] The first prong is a subjective inquiry about whether the declarant believed she was making the statement for the purpose of receiving medical diagnosis or treatment. *Id.* Answering this question is generally simple because when a patient consults a physician, the "desire to seek and receive treatment may be inferred from the circumstances." *Id.* at 261.

[13] Statements about "the nature of the assault or abuse," even if they identify the perpetrator, can satisfy the second prong of the reliability test if the statements "assist medical providers in recommending potential treatment for sexually transmitted disease, pregnancy testing, psychological counseling, and discharge instructions." *Id.* at 260. Thus, "in cases involving child abuse, sexual assault, and/or domestic violence, courts may exercise their discretion in admitting medical diagnosis statements which relay the identity of the perpetrator." *Perry v. State*, 956 N.E.2d 41, 49 (Ind. Ct. App. 2011). The determination whether a statement about the cause of injuries is pertinent to diagnosis or treatment is left to the discretion of the trial judge, who may consider the health care provider's testimony. *Id.* at 50.

[14] Steele asserts Baer was acting not as a nurse who was assisting with the diagnosis and treatment of S.M.'s injuries, but as a "law enforcement adjunct," (Appellant's Br. at 16), whose function was to collect evidence on behalf of the

police. Baer testified to the contrary, and we may not judge her credibility. *See, e.g., McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005) (a reviewing court does not reweigh the evidence or judge the credibility of the witnesses).

[15] Baer explained that forensic nurse examiners are called into a case when the nurse and physician suspect a patient has been a victim of a violent act or sexual assault and they want someone who can "get deeper in with the patient" about what happened and what injuries the patient may have. (Tr. at 119.) Baer explained that she takes a full medical history and then asks what brought the patient to the emergency room that day. She looks at a patient's injuries, assessing the person "from head to toe," (*id*. at 120), and then maps and photographs any injuries. She determines whether the person "need[s] any resources available." (*Id*.) She finds out "[i]f they're safe when they go home here or if I could get them a shelter or call someone for them." (*Id*.)

[16] Baer explained that the cause of an injury is important because the patient might be in danger and because the origin of the injury might impact the type of tests necessary to determine whether there are additional injuries "that we're not seeing on the surface." (*Id*. at 121.) When a patient has been the victim of a crime, the identity of the perpetrator is necessary for the State's Crime Victim Compensation Act, which "could be the payor of first resort for" medical bills. (*Id*. at 132.)

[17] Baer testified although a physician prepares the medical discharge plan, Baer talks to patients again before discharge to provide additional education to the

patient and to make sure the patient is going to a safe place. If the police have talked to the patient, then Baer helps the patient understand what may occur next.

[18] Baer confirmed that protocol is the one she would have followed the day S.M. came to the emergency room. Baer testified that she spoke to S.M. with a hospital social worker, and R.S.[5] When asked what caused her injury, S.M. reported she "was punched by her boyfriend of twenty (20) years," (*id*. at 131), and "then [R.S.] interjected . . . that he slapped and punched [S.M.] in the face." (*Id*. at 131-32.) They identified the boyfriend as Steele.

[19] Steele and S.M. had a twenty-year relationship, lived together, and had a child together, all of which made Steele's identity relevant to the hospital's treatment of S.M. *See Perry*, 956 N.E.2d at 50 (identification of assailant "relevant to any psychological counseling for domestic abuse, and significant to medical personnel in deciding how to discharge their patient"). Baer's forensic medical report suggested counseling and included phone numbers for domestic violence shelters. The trial court did not abuse its discretion in determining the

---

[5] That a police officer was present during this interview does not change our analysis, as Baer remained a nurse collecting information for treatment and diagnosis of S.M.'s injuries. *See Perry*, 956 N.E.2d at 56-57 (although forensic nurse collects what may be evidence at trial, the "primary purpose" of forensic nurse's examination was providing and receiving medical treatment for injuries). Because the principal objective was medical, any statements to Baer were "nontestimonial" and thus could not implicate Steele's right to confront witnesses under *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny. *See Perry,* 956 N.E.2d at at 57

statements made to nurse Baer were relevant for the purposes of medical treatment and admissible under Ind. Evidence Rule 803(4).[6] *See id*.

### *Sufficiency of the Evidence*

[20] When reviewing sufficiency of evidence to support a conviction, we examine "only the probative evidence and reasonable inferences supporting the verdict." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We will not reweigh evidence or substitute our judgment for the jury's judgment. *Id*. at 127. We affirm a conviction unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id*. at 147.

[21] Steele was convicted of Class D felony domestic battery. A person commits that crime when he knowingly or intentionally touches an individual who has a child in common with him and the offense is committed in the physical presence of a child less than sixteen years old. Ind. Code § 35-42-2-1.3 (2012).

---

[6] Steele asserts: "A medical professional would not rely on the identification of Steele or the description of most of the events the prior night in rendering diagnosis and treatment for her eye injury." (Br. of Appellant at 19.) We decline Steele's invitation to interpret "diagnosis and treatment" so narrowly as to exclude the emotional and psychological injuries that accompany physical injuries sustained due to domestic violence.

[22] Steele argues his conviction rests on inadmissible hearsay evidence. As that evidence was admissible, we address whether the State proved the elements of domestic battery.

[23] S.M. suffered injury to her eye. She fought with Steele the day she was injured. When she sought treatment for her eye, S.M. agreed to be examined by a nurse specializing in treatment of victims of violence. During the assessment by Baer, both S.M. and R.S. identified Steele as the cause of S.M.'s eye injury. This evidence was sufficient to convict Steele of domestic battery. *See Palacios v. State*, 926 N.E.2d 1026, 1035 (Ind. Ct. App. 2010) (evidence sufficient where victim testified contact was accidental, but officer testified victim reported moments after the event that Palacios hit her), *trans. denied*.

### Double Jeopardy

[24] Steele believes, based on his interpretation of the sentencing order and the chronological case summary, that judgments of conviction were entered on five counts of battery,[7] which subjected him to double jeopardy. He was not.

---

[7] Steele notes the jury considered only four counts of battery and argues the court's entry of a guilty finding on the fifth count violated his right to trial by jury. The fifth count of battery was a Class D felony based on Steele committing Class A misdemeanor battery against a person whom he previously had been convicted of battering. *See* Ind. Code § 35-42-2-1(a)(2)(D) (2012). Thus, for a guilty finding on the fifth count, a fact-finder needed to determine that Steele previously had been convicted of battering S.M.

Steele's trial had been bifurcated, and after the jury returned guilty verdicts on the first four counts, the deputy prosecutor said: "I've spoken with defense counsel and it is my understanding that they are going to stipulate to the records and we'll just move to incorporate it." (Tr. at 161-62.) When asked by the court if that was correct, defense counsel said, "That is correct." (*Id.* at 162.) The deputy prosecutor offered two exhibits – a judgment of conviction and an arrest report – and the parties submitted a stipulation whereby Steele agreed those documents were admissible and he is the same Richard Steele listed in those documents. Prior to admitting the documents, the court confirmed the stipulation with defense counsel, who stated: "We

[25] Steele is correct that use of the same evidence to convict a person of multiple crimes is a violation of the double jeopardy prohibition. *See Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (defining double jeopardy under the Indiana Constitution). If a trial court has entered multiple convictions based on the same evidence, then

> the trial court's act of merging, without also vacating, the convictions is not sufficient. Indeed, a double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered. *See Jones v. State*, 807 N.E.2d 58, 67-68 (Ind. Ct. App. 2004), *trans. denied*; *see also Webster v. State*, 708 N.E.2d 610, 616 (Ind. Ct. App. 1999) (holding that "where a defendant is found guilty of both the greater offense and the lesser included offense, the trial court's proper procedure is to vacate the conviction for the lesser included offense and enter a judgment of conviction and sentence only upon the greater offense"), *trans. denied*.

[26] *Payton v. State*, 818 N.E.2d 493, 497 (Ind. Ct. App. 2004), *trans. denied*. However, double jeopardy is not implicated when a defendant is found guilty of multiple counts that are merged into a single conviction. *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) ("a merged offense for which a defendant is found

---

did, Judge." (Tr. at 166.) The court went off the record without submitting that evidence to the jury or pronouncing a fifth guilty finding itself. Nevertheless, such finding was entered on the Chronological Case Summary, (App. at 8), and at the beginning of the sentencing hearing, when the court noted Steele had been found guilty of five counts and asked if that was correct, defense counsel said, "Yes, Judge." (Tr. at 174.)

To the extent Steele now asks us to find error in the lack of a jury finding as to the fifth count of battery, he waived any such argument when he declined to object to the completion of the trial and dismissal of the jury without any such finding. *See*, *e.g.*, *Cole v. State*, 28 N.E.3d 1126, 1135 (Ind. Ct. App. 2015) (failure to object resulted in waiver of issue for appeal). Furthermore, as no judgment of conviction was entered on this fifth count, any possible error in the finding of his prior conviction by a judge, rather than a jury, is harmless. *See* Ind. App. Rule 66 (noting appellate court cannot grant relief or reverse on appeal when the probable impact of any defect "is sufficiently minor so as not to affect the substantial rights of the parties").

guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned").

[27] The trial court's order did not infringe on Steele's right to be free from double jeopardy. The "Sentencing Order" lists the "DISPOSITION" for each count as "Finding of Guilt." (App. at 11.) Then, below, the court enters a single sentence of 545 days on Count I, and the court explains in the "CONFINEMENT COMMENTS" that "Counts 5, 4, 3, 2 Merge into Count 1. Judgement [sic] of conviction as to count 1." (*Id.*) Similarly, the Chronological Case Summary indicates the "Judgment" for each of the five counts was "Finding of Guilty," (*id.* at 8), and a single conviction of and sentence for Class D felony domestic battery. (*Id.* at 9.) As Steele's additional findings of guilt were neither "reduced to judgment," *Green*, 856 N.E.2d at 704, nor "sentenced for," *id.*, we need not take corrective action. *See id.* (holding no corrective action need be taken when defendant was found guilty, but no conviction or sentence was entered).

## Conclusion

[28] Steele has not demonstrated error in the admission of the testimony of and medical record produced by Baer. Steele's conviction is supported by sufficient evidence. Steele was not subjected to double jeopardy when the court merged the findings of guilt into one conviction. Accordingly, we affirm.

[29] Affirmed.

Barnes, J., and Pyle, J., concur.