## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 23 2016, 10:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Stephen T. Owens<br>Public Defender of Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| Richard Denning<br>Deputy Public Defender<br>Indianapolis, Indiana | James B. Martin<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew Stetler,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | September 23, 2016<br><br>Court of Appeals Case No. 01A02-1605-PC-1000<br><br>Appeal from the Adams Circuit Court<br><br>The Honorable Patrick R. Miller, Special Judge<br><br>Trial Court Cause No. 01C01-1305-PC-1 |

**Baker, Judge.**

[1]     Andrew Stetler appeals the denial of his petition for post-conviction relief.  He argues that the post-conviction court should have found that he received the ineffective assistance of trial counsel for four reasons:  (1) trial counsel failed to object to the testimony of two sexual assault nurse examiners; (2) trial counsel failed to object to a jury question; (3) trial counsel failed to impeach a witness with a prior inconsistent statement; and (4) trial counsel failed to object or ask for an admonishment during the State's closing argument.  Finding no error, we affirm.

## Facts

[2]     The underlying facts of this case were described by this Court in Stetler's direct appeal:

> In July of 2010, Stetler attended a campfire in nine-year-old S.G.L.'s backyard.  S.G.L.'s seven-year-old friend, K.H., was also present.  During the campfire, K.H. decided to walk to her home next door for a pillow, and Stetler walked with her.  When Stetler and K.H. arrived at her house and were on the back porch, Stetler pulled down K.H.'s pants and underpants and licked her "private."  Transcript at 377.  After Stetler and K.H. returned to S.G.L's house, S.G.L. climbed onto Stetler's lap and fell asleep. S.G.L. awoke when Stetler put his hands down the front of her pants and inside her underwear, touching her "private part" with his finger. *Id.* at 353.  Both girls reported Stetler's behavior to a neighbor.  The neighbor informed the girls' parents and the parents informed the police.  Both girls were taken to the Child Advocacy Center in Fort Wayne, Indiana, where the girls were questioned about Stetler touching them.  They were also physically examined by a Sexual Assault Nurse Examiner. During trial, S.G.L. testified that during the examination, the nurse touched her in the same location as

Stetler had. The nurse testified that when she used a sterile swab on S.G.L.'s clitoral hood, which is in the interior of the female sex organ, S.G.L. confirmed she was touching her in the same location as Stetler had.

*Stetler v. State*, 972 N.E.2d 404, 405-06 (Ind. Ct. App. 2012).

[3] At trial, sexual assault nurse examiner (SANE) Leslie Cook testified regarding her examination of S.G.L. Cook has a dual role of patient care and forensic evidence collection. Cook testified that, as part of her examination of S.G.L., she obtained a patient history, explaining:

> That's the patient's words. That's why they're telling you that they're coming to see you today . . . . Patient history is the single most important part of, not only mine, but any kind of nursing diagnosis so when you go to any kind of a healthcare setting, your nurse is going to ask you, can you tell me why you're here today because that's going to help to formulate that nursing diagnosis plan for their treatment.

Tr. p. 459, 461. Cook asked S.G.L. to tell her why she was there that day and S.G.L. responded appropriately. Cook performed a head-to-toe physical examination of S.G.L., instructing S.G.L. to put on a gown, and Cook wore gloves during the examination, focusing on the genitalia. S.G.L. was eleven years old at trial and testified that Cook was "like a nurse or something," and that "She did an exam or something." *Id.* at 360. The trial court permitted Cook to testify regarding S.G.L.'s statements, and Stetler's counsel did not raise a hearsay objection.

[4] After Cook testified, the jury indicated that it had a question for Cook. With no objection from Stetler's attorneys, the trial court asked Cook the question: "Did [S.G.L.] tell you that Andy Stetler had touched her on her private parts on more than one occasion?" Tr. p. 469. Cook responded affirmatively.

[5] SANE nurse Joyce Moss also testified at trial. She stated that K.H. told her that Stetler had pulled down K.H.'s pants and licked her "pee-pee." *Id.* at 432. Moss also testified that K.H. said that Stetler told her not to tell anybody and that "he did it to my friend [S.G.L.] like ten times." *Id.* at 433. Stetler's attorneys did not object or move for an admonishment.

[6] Rocky Winget was at the campfire on the night that Stetler molested the two girls. Winget testified that S.G.L. was sitting on Stetler's lap and attempted to get up, only to have him hold her down, and that it happened more than once. *Id.* at 391. In his videotaped statement to police, Winget said that S.G.L. had attempted multiple times to get on Stetler's lap but that each time, he got upset and pushed her off. Stetler's attorneys did not impeach Winget with this prior inconsistent statement.

[7] During the State's closing argument, the deputy prosecutor stated to the jury that "[t]here is no evidence to support any reason for you to disregard the testimony of [K.H.]. None. You should not speculate. Your job is not to find a reason to find Andy Stetler not guilty. That is not your job. Your job is to consider the evidence presented in this cause." *Id.* at 483. The State also argued, "You cannot put yourselves above the experts. You should not do that.

If you do that then what you're [sic] job is not considering the evidence, but now your job is beginning trying [sic] to find a way to find him not guilty." *Id.* at 485. Stetler's attorneys did not object to these statements.

[8] Following the trial, the jury found Stetler guilty of two counts of class A felony child molesting—one count for each victim. Stetler admitted to being an habitual offender. The trial court sentenced him to an aggregate term of ninety years imprisonment. Stetler appealed, arguing that the evidence was insufficient and that the sentence was inappropriate. This Court affirmed. *Id.* at 409.

[9] On May 24, 2013, Stetler filed a pro se petition for post-conviction relief, amending the petition by counsel on August 27, 2015. A post-conviction hearing was held on February 23, 2016, and the post-conviction court denied the petition on April 8, 2016. In pertinent part, the post-conviction court found as follows:

> 20. The Court finds that the decision not to use the pretrial statement of Winget was a strategic decision by defense counsel, [and] the evidence does not support a finding of any resulting prejudice. Therefore, the court finds no basis for relief . . . .

> 21. Stetler contends . . . that defense counsel was ineffective when they failed to object to hearsay testimony of Leslie Cook and Joyce Moss. Both Cook and Moss are [SANEs] and testified about their respective examinations of the two different children molested by Stetler. The court finds the statements to fall within the hearsay exception found in

Rule 803(4) of the Indiana Rules of Evidence and therefore were readily admissible. Therefore, there is no basis for relief . . . .

***

23. The court finds that the [juror question of Cook as to whether S.G.L. had told her that Stetler had touched her on her private parts on more than one occasion] was objectionable.

***

26. The failure to object to the juror question did not result in prejudice such that the outcome of the criminal trial would be different had counsel objected. Counsel's failure to object was not so significant to amount to ineffective assistance of counsel. Therefore, the court finds no basis for relief . . . .

***

29. Finally, Stetler contends defense counsel failed to object during the prosecutor's closing argument. . . . Trial counsel testified that they decided against objecting because it could have resulted in the prosecutor emphasizing the same points. Again, this was a strategic decision made by competent trial counsel. Stetler's trial counsel was afforded the opportunity to address the jury as well. No prejudice resulted from the counsel's failure to object during the prosecutor's closing argument. Therefore, the court finds no basis for relief . . . .

Appellant's App. p. 79-81 (some internal citations omitted).  Stetler now appeals.

# Discussion and Decision

## I.  Standard of Review

[10]    The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence."  *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).  "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment."  *Id.*  To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.  *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993).  Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6).  Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made."  *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

[11]    A claim of ineffective assistance of trial counsel requires a showing that:  (1) counsel's performance was deficient by falling below an objective standard of

reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012). However, "[i]f we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011). "Indeed, most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

## II. Nurse Testimony

Stetler argues that his trial attorney should have objected to the testimony provided by Nurses Cook and Moss. According to Stetler, portions of their testimony constituted inadmissible hearsay that would not have been admitted had an objection been made.

Hearsay—an out-of-court statement used to prove the truth of the matter asserted—is generally inadmissible unless it falls under an exception. Ind.

Evidence Rules 801(c), 802.  Evidence Rule 803(4) provides an exception for a statement that:

  (A)  is made by a person seeking medical diagnosis or treatment;

  (B)  is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

  (C)  describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

Evid. R. 803(4).  To determine if hearsay should be admitted under this exception, we ask two questions:  (1) "is the declarant motivated to provide truthful information in order to promote diagnosis and treatment," and (2) "is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment."  *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996).

[14]  When a party attempts to admit hearsay under this exception and the hearsay statements were made by a child, "we require a more robust evidentiary foundation[.]"  *VanPatten v. State*, 986 N.E.2d 255, 257 (Ind. 2013).  Therefore, there must be evidence that the declarant understood the professional's role.  "This evidence does not necessarily require testimony from the child-declarant; it may be received in the form of foundational testimony from the medical professional detailing the interaction between him or her and the declarant,

how he or she explained his role to the declarant, and an affirmation that the declarant understood that role." *Id.* at 261.

## A. Nurse Cook

With respect to Nurse Cook, Stetler focuses on her testimony that S.G.L. told Cook that Stetler had touched her on her internal clitoral hood. According to Stetler, "[t]his evidence was hearsay and no foundation had been laid for the medical exception to the hearsay rule." Appellant's Br. p. 14. Therefore, had counsel objected, it would have been sustained, and as this evidence was the sole evidence establishing penetration, Stetler would not have been convicted of a class A felony.

Stetler argues that the State failed to establish a sufficient foundation under Rule 803(4) with respect to Cook's testimony. We turn first to the first prong of our inquiry—whether the declarant was motivated to provide truthful information. In this case, S.G.L. was nine years old at the time, meaning that she likely understood the need to be truthful during a medical examination. *Cf. VanPatten*, 986 N.E.2d at 265 (noting that if the six-year-old victim had been older, "the appearance of the building, the exam room, and [the nurse's] scrubs and job title would probably be sufficient circumstances from which to infer that [she was] motivated to speak truthfully"). Nurse Cook testified that while she was examining S.G.L., Cook was wearing gloves and S.G.L. was wearing a gown. S.G.L. testified that Cook was "like a nurse or something" and that "[s]he did an exam or something." Tr. p. 360. We find that this evidence

sufficiently establishes the first prong of our inquiry—that S.G.L. was motivated to provide truthful information for the purpose of medical diagnosis and treatment.

[17]     With respect to the second prong—whether the hearsay statements were such that an expert in the field would reasonably rely on them in rendering diagnosis or treatment—Stetler argues that S.G.L.'s statements were obtained exclusively in Cook's forensic, as opposed to her diagnostic or treatment, role. This Court has determined that statements about the nature of abuse, even if they identify the perpetrator, can satisfy this prong of the reliability test. *Steele v. State*, 42 N.E.3d 138, 142 (Ind. Ct. App. 2015). Therefore, in cases involving child abuse, "courts may exercise their discretion in admitting medical diagnosis statements which relay the identity of the perpetrator." *Id.*

[18]     In this case, during Cook's head-to-toe physical examination of S.G.L., the child had no difficulty telling the nurse what had happened, talking about some soreness she had experienced, and stating the identity of the perpetrator. These statements were germane to the nurse's recommendations for diagnosis and treatment. We find that this evidence sufficiently establishes the second prong.

[19]     In sum, we find that the post-conviction court did not err by determining that the foundation for S.G.L.'s hearsay statements to Nurse Cook had been properly laid by the State. In other words, had an objection been raised by Stetler's attorneys, it would have been overruled. We find no ineffective assistance on this basis.

# B. Nurse Moss

[20] With respect to Nurse Moss, Stetler focuses on the testimony that K.H. told Moss that Stetler had licked S.G.L.'s privates ten times. Stetler argues that this testimony does not fit within any exceptions to the hearsay rule and that his attorneys' failure to object to it "prejudiced Stetler because it was evidence of prior misconduct which S.G.L. had not testified about and was different in nature from the accusation S.G.L. had made." Appellant's Br. p. 14.

[21] We agree that this testimony was objectionable. Initially, we note that Stetler's attorneys would not have been able to predict that this testimony was about to occur because it was in response to the very general question, "anything else?" PCR Tr. p. 40. Furthermore, counsel testified that he had to make a decision about whether to call the testimony to the trial court's attention and ask to admonish the jury or to refrain from commenting and hope that the jury would not "spend too much time on it." *Id.* at 41.

[22] It is well established that a failure to object does not constitute ineffective assistance of counsel if the decision to remain silent was a strategic one. *Pennycuff v. State*, 745 N.E.2d 804, 815 (Ind. 2001). Indeed, a defense attorney may well pass up an opportunity to object out of a desire to avoid focusing the jury's attention on a particular statement. *Id.* In this case, that is precisely what occurred, and the post-conviction court properly declined to second-guess counsel's strategic decision. We find no error on this basis.

# III. Juror Question

[23] Next, Stetler argues that his attorneys were ineffective for failing to object to a jury question asking Nurse Cook if S.G.L. told her that Stetler "had touched her on her private parts on more than one occasion." Tr. p. 469. The post-conviction court found that, while the question was objectionable, Stetler has not established prejudice stemming from the lack of an objection. As noted above, to establish prejudice, Stetler must show that, but for his attorneys' failure to object, there is a reasonable probability that the outcome of the trial would have been different. *Davidson*, 763 N.E.2d at 444.

[24] Initially, we note that the jurors' question was not specific in that it did not distinguish between acts of touching that occurred in this incident and any acts that may have occurred on other occasions altogether. In other words, the question could have been an inquiry about repeated touching during this incident. And Cook simply responded "[s]he did," without further elaboration or specific details. Tr. p. 469. Aside from Nurse Moss's unresponsive remark about K.H.'s statement, the record is devoid of questioning or testimony about prior conduct. The State did not attempt to present evidence or argument about ongoing acts of molestation that would have caused the jury to convict based upon a propensity to commit sexual acts upon a child. Instead, the State elicited from S.G.L. that she considered Stetler a friend at the time of the assault but no longer thought of him as a friend at the time of trial because "[h]e did that to me," implying that this was the first time Stetler had molested her. Tr. p. 365.

The evidence in the record strongly supported Stetler's guilt, and this brief, general, and isolated instance of testimony in response to the jury question was inessential to the State's case. Therefore, we find that the post-conviction court did not err by finding that Stetler has not established a reasonable probability that if his attorneys had objected to the jury question and the objection had been sustained, the outcome of the trial would have been different.

## IV. Witness Impeachment

Next, Stetler argues that his attorneys should have impeached Winget's testimony with his prior inconsistent statements that he had made to police. In both his police interview and trial testimony, Winget admitted to being extremely drunk during his observations of what happened at the campfire. Tr. p. 389-90. Consequently, counsel made a strategic determination that Winget was an unreliable witness lacking credibility and was not worried about the jury giving significant weight to his testimony. Moreover, counsel was "concerned" that if Winget's entire prior statement had been admitted, it would have been a net negative result for Stetler. PCR Tr. p. 43. In addition to Winget being a generally non-credible witness, "the less those little girls were on my client's lap with the jury, the better." *Id.* In other words, Stetler's attorneys made a strategic decision to refrain from emphasizing this testimony for the jury because Winget was not a reliable, credible witness. The post-conviction court did not err by declining to second-guess this strategy.

# V. Closing Argument

Finally, Stetler argues that his attorneys should have objected to certain statements made by the State during closing arguments. The statements to which he directs our attention are the following:

- "There is no evidence to support any reason for you to disregard the testimony of [K.H.]. None. You should not speculate. Your job is not to find a reason to find Andy Stetler not guilty. That is not your job. Your job is to consider the evidence presented in this cause." *Id.* at 483.

- "You cannot put yourselves above the experts. You should not do that. If you do that then what you're [sic] job is not considering the evidence, but now your job is beginning trying [sic] to find a way to find him not guilty." *Id.* at 485.

To the extent that Stetler contends that the second statement improperly urged the jury to credit and give weight to Cook's testimony, we note that the jury was correctly instructed with regard to expert testimony: "A person who has specialized education, knowledge or experience is permitted to express an opinion in those areas. You should evaluate this testimony as you would other evidence in this case. You should also consider the witness's skill, experience, knowledge, and familiarity with the facts in this case." Tr. p. 526.

Moreover, Stetler's attorneys made a strategic decision to address the statements during their own closing argument rather than raising an objection during the State's closing argument that may not have been sustained. Specifically, counsel argued as follows:

> The statements by the two nurses, Leslie Cook and Joyce Moss prove any element of the crime? No. They don't. They did their best to provide you with the knowledge that they have. But don't leave your knowledge out of the equation. You guys are each independent thinkers, who have to come together as a collective on this matter. The only portion of their statements that is firsthand knowledge is if they both saw no injury on either of these girls and I understand with the nature of what they . . . what my client is accused of, there may not have been injury to those girls. But I want you, when you're back in that jury room, ask yourselves, wouldn't that piece of evidence really have helped and would it not have removed all reasonable doubt from your minds.

*Id.* at 511-12. In other words, Stetler's attorneys *did* address the statements made by the deputy prosecutor; they merely chose to do so during their own closing rather than objecting during the State's argument. The post-conviction court properly declined to second-guess this matter of strategy. Stetler's attorneys were zealous advocates for their client throughout the trial, and we find no error in the post-conviction court's conclusions that Stetler did not establish ineffective assistance of counsel and that Stetler is not entitled to post-conviction relief on that basis.

[29] The judgment of the post-conviction court is affirmed.

Vaidik, C.J., and Najam, J., concur.