**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**DANNY W. RAMSEY**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 24 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANNY W. RAMSEY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 14A01-1102-PC-84 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE DAVIESS CIRCUIT COURT
The Honorable Sherry B. Gregg Gilmore, Special Judge
Cause No. 14C01-0703-PC-2

**February 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Danny Ramsey appeals the partial denial of his petition for post-conviction relief. He presents six issues, which we consolidate and restate as three:

1. Whether the post-conviction court erred when it denied Ramsey's request for an evidentiary hearing;

2. Whether trial counsel provided ineffective assistance because he did not request a change of judge, request suppression of Ramsey's confession, request a hearing to challenge the probable cause affidavit supporting the search warrant for Ramsey's house, and/or move to dismiss the charges against Ramsey; and

3. Whether appellate counsel's failure to challenge Ramsey's sentence constituted ineffective assistance.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts of Ramsey's convictions and sentence were set forth in his direct appeal:

Between January and May 2002, Penny Drake knew Ramsey through her then-boyfriend. Drake had been to Ramsey's apartment in Washington and had seen a large amount of methamphetamine openly displayed there. Drake contacted the Daviess County Sheriffs Department and informed the Department that Ramsey was dealing methamphetamine and other illegal drugs. Detective Ron Morgan instructed Drake to continue her normal activities and to arrange a purchase from Ramsey.

On May 1, 2002, Drake arranged a buy with Ramsey. Before purchasing the methamphetamine, Detective Morgan searched Drake and her residence to ensure that no illegal drugs were present. Detective Morgan found no drugs or other people inside Drake's residence, and he maintained visual surveillance of the house in order to ensure that no one other than Drake and Ramsey were inside. Detective Morgan also placed a transmitter inside the house to hear the conversation between Ramsey and Drake, but he did not record the conversation. After Drake met with Ramsey in her house, she gave Detective Morgan 3.01 grams of methamphetamine that she had just purchased from Ramsey. Drake and Detective Morgan followed similar procedures in making several more buys from Ramsey throughout May 2002. These later conversations were recorded.

During late 2003 and early 2004, Molly Haag often visited Ramsey's

residence, and she saw illegal drugs there every time that she visited. On February 18, 2004, Haag drove Ramsey to obtain a handgun that she later observed in a room of Ramsey's home.

The Indiana State Police began a separate investigation of Ramsey after obtaining information from a confidential informant about Ramsey's drug dealing activities. On February 18, 2004, the Indiana State Police executed a search warrant at Ramsey's residence. The police found Ramsey in the home as well as plant material, rolling paper, and cocaine. Ramsey had $1,760.21 on his person. In an upstairs bedroom, the police recovered a baggie corner, which is commonly used for packaging illegal drugs for sale, marijuana cigarettes, foil, and a light bulb. The police also found a handgun, two digital scales, 59.29 grams of methamphetamine under the sink floorboard, 8.12 grams of marijuana, and 82 grams of methamphetamine inside a jacket that Ramsey admitted was his.

On February 20, 2004, the State charged Ramsey with dealing in methamphetamine, possession of a narcotic drug while in possession of a firearm, maintaining a common nuisance, possession of marijuana, and being a habitual offender; all of the charges were based on the evidence obtained from the 2004 arrest. On April 26, 2004, the State charged Ramsey with eight counts of dealing methamphetamine based on evidence obtained from Drake in 2002. On May 17, 2005, Ramsey moved for and was granted the consolidation of the two cases for trial, and the State dismissed a possession of paraphernalia count. Ramsey moved to suppress the warrant obtained by Detective Morgan and all evidence obtained as a result of the warrant from the 2002 events because of staleness and lack of control of the buys. The trial court denied the motion to suppress.

The jury trial was held on May 17–20, 2005. During the trial, Detective Morgan testified that the reasons for his delay in filing the charges were that he wanted to allow time to pass from Drake's last contact with Ramsey, that he was working in Indianapolis from September 2002 through July 2003 on a complex case that took much of his time, and that the Drug Enforcement Agency (DEA) had been investigating Ramsey for possible involvement in a federal drug conspiracy with which Detective Morgan did not want to interfere. Ramsey objected to the DEA statement and requested a mistrial. The trial court sustained the objection, stating, "The jury will be instructed to disregard the answer that was given to that question with regard to those matters. Court will overrule the motion for mistrial." Tr. p. 379.

* * *

The jury ultimately found Ramsey guilty on all counts.

On May 20, 2005, the trial court began the habitual offender/aggravating circumstances phase of the trial. Ramsey objected to the two being combined, but the trial court overruled the objection. The jury

3

found Ramsey to be a habitual offender and found the existence of all four proposed aggravating circumstances. The trial court sentenced Ramsey to an aggregate term of seventy-five years, and Ramsey now appeals.

*Ramsey v. State*, 853 N.E.2d 491, 496-97 (Ind. Ct. App. 2006), *trans. denied*. On direct appeal, Ramsey argued there was

insufficient evidence to support the habitual offender finding, that the habitual offender and aggravating circumstances phases of the trial should not have been combined, that the trial court erred in denying his motion for a mistrial based on prosecutorial misconduct, and that the trial court erred in admitting evidence obtained from controlled buys and during the execution of a search warrant.

*Id*. at 495. We affirmed.

On March 8, 2007, Ramsey filed a *pro se* petition for post-conviction relief. The matter was referred to the State Public Defender, and the State filed its answer on March 16. Ramsey's public defender withdrew on July 31, 2009, and State filed an amended answer on December 14. Ramsey, *pro se*, filed a motion to amend his petition for post-conviction relief and a motion for an evidentiary hearing on December 18. The post-conviction court granted his motion to amend his petition on February 10, 2010, and ordered Ramsey to submit his affidavits in support of his petition by April 1. On January 19, 2011, the post-conviction court denied all of Ramsey's claims except the argument his trial counsel was ineffective because he did not object to the State's allegation Ramsey was an habitual offender.[1]

---

[1] The post-conviction court ordered Ramsey's habitual offender enhancement reversed.

4

**DISCUSSION AND DECISION**

Post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). As post-conviction proceedings are civil in nature, the petitioner must prove his grounds for relief by a preponderance of the evidence. *Id.* A party appealing a negative post-conviction judgment must establish that the evidence is without conflict and, as a whole, unmistakably and unerringly points to a conclusion contrary to that reached by the post-conviction court. *Id.* Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but "the findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citation omitted).

1. <u>Denial of Evidentiary Hearing</u>

Ramsey argues he was erroneously denied an evidentiary hearing on his petition for post-conviction relief because his petition raised issues of fact to be decided by the court. P-C. R. 1(4)(g) states:

> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.

Based thereon, Ramsey asserts, the court had an obligation to hold a hearing.

The State asserts that rule applies only when a party requests a summary disposition, which neither party did here. Instead, the State argues, because Ramsey filed his petition *pro se*, the court correctly proceeded without an evidentiary hearing pursuant to another post-conviction rule:

> In the event petitioner elects to proceed *pro se*, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing. If the *pro se* petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena. Petitioners who are indigent and proceeding in *forma pauperis* shall be entitled to production of guilty plea and sentencing transcripts at public expense, prior to a hearing, if the petition is not dismissed. In addition, such petitioners shall also be entitled to a record of the post-conviction proceeding at public expense for appeal of the denial or dismissal of the petition.

P-C. R. 1(9)(b) (italics added).

As the post-conviction court could "order the cause submitted upon affidavit at its discretion," *id*., Ramsey must demonstrate the post-conviction court abused its discretion. *See Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005) ("[W]e will review the PCR court's decision to forego an evidentiary hearing when affidavits have been submitted under Rule 1(9)(b) under an abuse of discretion standard."), *trans. denied*. We hold it did not.

Ramsey filed a forty-two page petition for post-conviction relief, with extensive

argument regarding each of his requests for relief. The trial court issued a thirty-nine page order addressing each of Ramsey's issues. On appeal, Ramsey argues, "it is clear that there were unresolved facts that required an evidentiary hearing for a full and fair determination of the cause[,]" (Br. of Appellant at 7), but he cites no specific issues or facts to support his contention. Because Ramsey failed to cite specific issues that contained genuine questions of fact, he has failed to demonstrate an evidentiary hearing was necessary for determination of the issues he raised. *See* P-C R. 1(4)(g) ("If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.") Thus we cannot say the trial court abused its discretion in denying his petition for an evidentiary hearing.

2.       Ineffective Assistance of Trial Counsel

We review claims of ineffective assistance of counsel under the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, a claimant must show counsel's performance fell below an objective level of reasonableness based on prevailing professional norms, *Taylor v. State*, 882 N.E.2d 777, 781 (Ind. Ct. App. 2008), and that the deficient performance resulted in prejudice. *Id*.

"Prejudice occurs when the defendant demonstrates that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). We need not consider whether counsel's performance fell below the objective standard if that performance would have not changed the outcome. *Strickland*, 466 U.S. at 687.

7

### a. Change of Judge

"To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been successful." *Moore v. State*, 872 N.E.2d 617, 621 (Ind. Ct. App. 2007) (quoting *Wales v. State*, 768 N.E.2d 513, 523 (Ind. Ct. App. 2002)), *reh'g denied, trans. denied*. Ramsey argues counsel was ineffective because he did not request a change of judge based on the fact the judge presiding over Ramsey's trial was also the judge who signed the warrant for Ramsey's arrest.

In *Beverly v. State*, 543 N.E.2d 1111, 1115 (Ind. 1989), our Indiana Supreme Court held "the fact that appellant's trial judge signed his probable cause affidavit and arrest warrant does not constitute a showing of actual prejudice or bias[.]" Based on that case law, the trial court should not have granted a motion for a change of judge based on that argument. Ramsey has not indicated any other reason the judge may have been prejudiced or biased. Therefore, Ramsey has not demonstrated counsel was ineffective for declining to request a change of judge.

### b. Suppression of Evidence

Ramsey next argues his trial counsel should have requested suppression of his confession because it was the product of an unreasonable delay between his arrest and initial hearing. As a rule, a person arrested without a warrant should be brought before a magistrate within forty-eight hours of the arrest for a determination of probable cause. *Griffith v. State*,

8

788 N.E.2d 835, 841 (Ind. 2003). If there is a delay in this process, "[t]he normal remedy . . . is the suppression of the evidence obtained during the unreasonable delay." *Stafford v. State*, 890 N.E.2d 744, 749 (Ind. Ct. App. 2008).

The State notes, and the Record confirms, the statement that Ramsey calls his confession occurred while police were executing the search warrant at his residence. The police asked if a jacket was his, he said "yes," and the jacket contained methamphetamine. Although neither party explains whether Ramsey was under arrest at the time he admitted the jacket was his, it is obvious that his admission to owning the jacket was not the product of a prolonged detention and Ramsey has not argued he was coerced into making the statement. *See Peterson v. State*, 674 N.E.2d 528, 539 (Ind. 1996) ("It is only when the confession is the product of that detention that it must be suppressed. When the confession is the product of the defendant's free will, it is admissible."), *reh'g denied, cert. denied*, 522 U.S. 1078. Thus, had his counsel requested suppression of his confession, Ramsey has not demonstrated any likelihood the trial court would have granted it. Therefore, Ramsey has not demonstrated his trial counsel was ineffective.

        c.    *Franks* Hearing

Ramsey asserts his trial counsel should have requested a hearing to test the sufficiency of the probable cause affidavit that was the basis for the charges against him. In *Franks*, the United States Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment

requires that a hearing be held at the defendant's request.

438 U.S. at 155-56.

On direct appeal, Ramsey challenged the search warrant, and we held the State sufficiently established the credibility of the confidential informant providing the information therefor. *Ramsey*, 853 N.E.2d at 504. Ramsey has not explained how different information would have been elicited during the *Franks* hearing. Thus it appears Ramsey is attempting to restate an issue that was already decided against him. Post-conviction petitioners are not permitted to rephrase an issue raised on direct appeal in an attempt to induce a different result during post-conviction proceedings. *See Ben-Yisrayl*, 738 N.E.2d at 258 (When an issue has been presented and decided as part of a direct appeal, "the doctrine of *res judicata* applies, therefore precluding its review in post-conviction proceedings. . . . A petitioner for post conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error.") (internal citations omitted). This issue was decided in Ramsey's direct appeal and was not available for re-litigation in post-conviction proceedings.

### d. Vindictive Prosecution

Ramsey claims his trial counsel should have moved to dismiss the additional charges filed against him after he rejected the State's plea offer because the new charges were filed vindictively and in retaliation for his rejection of the plea offer. When charges are modified prior to trial, the defendant is not entitled to a presumption of vindictiveness. *Reynolds v. State*, 625 N.E.2d 1319, 1321 (Ind. Ct. App. 1993), *trans. denied*. "The filing of charges

supported by probable cause subsequent to a break down in plea negotiations does not constitute retaliation for the defendant's exercise of his right to trial." *Id*. at 1322. The State had probable cause to file the additional charges against Ramsey based on a prior investigation. Therefore, pursuant to *Reynolds*, the trial court would not have granted a motion to dismiss the additional charges against Ramsey, and he has not demonstrated trial counsel was ineffective for failing to do so.

       3.      <u>Ineffective Assistance of Appellate Counsel</u>

We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Fisher v. State*, 810 N.E.2d 674, 676-77 (Ind. 2004). The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id*. at 677.

Ineffective appellate assistance claims generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id*. We employ a two-part test to evaluate "waiver of issue" claims: (1) whether the unraised issues are significant and obvious from the face of the record, and (2) whether the unraised issues are "clearly stronger" than the issues raised. *Id*.

Because counsel is afforded considerable discretion in choosing strategy and tactics, we presume counsel's assistance was adequate and all significant decisions were made in the exercise of reasonable professional judgment. *State v. Miller*, 771 N.E.2d 1284, 1288 (Ind. Ct. App. 2002). Deciding which issues to raise on appeal is one of the most important strategic decisions appellate counsel must make. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind.

11

1998), *reh'g denied*.

Ramsey argues his appellate counsel, who was also his trial counsel, should have challenged his sentence because "the sentencing court failed to give a sentencing statement with a detail [sic] recitation of the court's reason for the sentence imposed, considering aggravating and mitigating circumstances." (Br. of Appellant at 21.) However, had his appellate counsel challenged his sentence based on an allegedly insufficient sentencing statement, the argument would have been rejected pursuant to *Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002), in which our Indiana Supreme Court held an appellate court may review both the written and the oral sentencing statements of the trial court to determine the findings of the court. Thus, because the argument would have been unsuccessful, Ramsey was not prejudiced by its omission and has failed to demonstrate his appellate counsel was ineffective for that reason.

## CONCLUSION

The post-conviction court did not abuse its discretion when it denied Ramsey's request for an evidentiary hearing because the matter was properly decided by affidavits pursuant to P-C Rule 1(9)(b). Ramsey has not demonstrated trial counsel was ineffective; the motions for change of judge, suppression of evidence, and to dismiss the additional charges against Ramsey would not have been granted. Ramsey's argument trial counsel should have moved for a *Franks* hearing is *res judicata* because the issue was addressed on direct appeal. Finally, Ramsey has not demonstrate appellate counsel was ineffective for omitting the issue of sentencing before the trial court because there were stronger issues to be presented on

12

appeal and Ramsey's proffered argument would have been ultimately unsuccessful. Accordingly, we affirm the decision of the post-conviction court.

Affirmed.

NAJAM, J., and RILEY, J., concur.